## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DELMAR BRADFORD** | **CIVIL ACTION** |
| **VERSUS** | **NO. 07-3885** |
| **BURL CAIN "WARDEN"** | **SECTION "K"(2)** |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and the petition **DISMISSED WITH PREJUDICE**.

---

[1] Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.    FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Delmar Bradford, is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]   On August 24, 2000, Bradford was indicted in Orleans Parish with three counts of second degree murder and one count of attempted second degree murder.[3]   The Louisiana Fourth Circuit Court of Appeal summarized the facts of the case as follows:

> On July 5, 1998, at approximately 9:30 p.m., Officer David Dotson and his partner, Officer Melody Young, were dispatched to the scene of a shooting at the intersection of St. Anthony and N. Villere Streets.  Dotson observed a vehicle exhibiting multiple gunshots with all the windows shot out.  A large crowd of people had gathered outside the vehicle.  Two passengers in the rear of the vehicle, Deskanell Davis and Rickey Aufrey, were dead.  A third victim in the front seat, Leonard Robins, suffered from multiple gunshot wounds to his upper extremities, but was still alive.  Dotson related that Robins was coherent and kept saying that he was not going to die.  The officers noticed a trail of blood leading away from the car, which lead Officer Dotson to a fourth victim, William Mims, nearby with a gunshot wound to his hand in an apparent state of shock.  The officers acted to preserve the crime scene and awaited arrival of emergency personnel. Leonard Robins subsequently expired from his injuries.
>
> Detective Greg Hamilton was assigned as the lead investigator.  He ensured that all bullet casings and bullet fragments were collected at the crime scene.
>
> The only survivor of the shooting, William Mims, was not able to give Detective Hamilton any information as to who was responsible for the shooting.  Despite his efforts at interviewing people in the area of the shooting in the coming days, Detective Hamilton was unable to identify any suspects during his investigation until he was informed in late August that a victim of another shooting, Percy Cooper, was a witness.
>
> Percy Cooper testified that on August 23, 1998, he was riding his bicycle to a block party.  At the intersection of North Robertson and Pauger Streets, Cooper observed a pickup truck pass with the defendant, Delmar Bradford, in the bed of the truck.  The two acknowledged each other, and the truck proceeded around the corner.  When Cooper reached the corner of St. Anthony and N. Robertson Streets, he saw Bradford and another individual standing there, and they started firing at him.  Bradford was armed with an assault rifle.  Cooper fled on the bicycle, but was shot several times and fell.  As

---

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 1 of 9, Indictment, 8/24/00; Grand Jury Indictment, 8/24/00.

he lay on the ground, Bradford approached, laughed, and then ran away. Cooper had been shot twice in the arm, in the hand, the hip, and the foot. He was able to get up and hop over to some steps where he sat down. A crowd formed around him. Subsequently, emergency personnel and the police arrived, and Cooper was taken to the hospital.

Detective Carlton Lawless was assigned to the follow up investigation in the shooting of Percy Cooper. He took control of the crime scene from the initial responding officers. Lawless spoke briefly with Percy Cooper at the scene and asked if he knew who shot him. All Cooper could tell him before he was taken to hospital was that it was someone named Delmar, Delmarcus, or Del.

Detective Lawless began locating spent casings at the crime scene. He observed a Ford Taurus with several bullet holes and broken windows. Lawless also observed that a bullet had entered a residence at 1723 N. Robertson Street through a window. The bullet passed through an interior wall and traveled through the common wall into the adjoining residence at 1725 N. Robertson. Lawless directed the crime lab to recover the bullet fragment from the residence as well as another fragment from the doorframe of another house. Numerous shell casings were also recovered from the intersection.

Detective Lawless was familiar with a subject by the name of Delmarcus Smith, and playing a hunch, as he described it, he compiled a photographic lineup depicting the subject and presented it to Cooper at the hospital the next day. Cooper viewed the lineup and informed the detective that the perpetrator was not in the lineup.

Detective Lawless returned to his office and after speaking with several officers including Detective Hamilton, he developed Delmar Bradford as a suspect and compiled a photographic lineup. Detective Hamilton also compiled a photographic lineup depicting Delmar Bradford for use in his investigation of the triple homicide, and the two returned to the hospital where Cooper identified Delmar Bradford as the person who had shot him, as well as the perpetrator of the shooting on July 5, 1998.

Percy Cooper testified that when he spoke to Detective Lawless and Detective Hamilton he revealed that the person who shot him had also been responsible for the previous homicides. Cooper testified that on July 5, 1998, he was walking on St. Anthony Street after leaving a friend's house. He stated that he observed a burgundy car pass him and stop at the next intersection. A green car was parked at the stop sign. Delmar Bradford exited the burgundy vehicle with an assault rifle and began shooting at the green car. Cooper was approximately two houses away at this time. When the shooting started, Cooper ran in the opposite direction. Cooper stated that he recognized Bradford as he had known him previously.

Sgt. Robert Norton testified that he was a member of the team that executed a warrant for Delmar Bradford at 5404 Royal Street. The officers arrived at the home at approximately 4:00 a.m. and were greeted by Bradford's mother. She directed the officers to a bedroom where Bradford was located. Inside a closet in the room, Sgt. Norton located an AK-47 assault rifle and two fully loaded clips of ammunition that were taped together.

Officer Byron Winbush testified as an expert in firearms and firearms examinations. He examined a bullet recovered during the autopsy of Leonard Robins and a bullet recovered during the autopsy of Rickey Aufrey. Winbush stated that they were both 7.62 millimeter bullets, which is the type of ammunition normally used in an

AK-47 rifle.  By comparing the striations on the bullets he was able to determine that they were both fired from the same weapon.  Winbush further examined twenty-three 7.62 millimeter shell casings recovered from the scene of the homicide and was able to determine that twelve of the casings were fired by one weapon and that eleven of the casings were fired by another weapon.  Officer Winbush test fired a round from the weapon recovered by Sgt. Norton and made a comparison with the two bullets obtained during the autopsies.  He testified that the markings on the test fire bullet were insufficient to render a determination as to whether the two autopsy bullets were fired by the weapon in question.  He stated though that in his expert opinion there was an 85% probability that the two bullets were fired from the weapon.  Winbush related that the type of weapon made it difficult to make a determination as it has only four lands and grooves in the barrel as opposed to five or six found in a .38 caliber pistol.  He stated further that there had been some damage to the barrel of the gun as some of the lands and grooves were overlapping.  He explained that the weapon is a poorly manufactured weapon and that repeated firing of the weapon and the failure to clean it will cause wear and tear on the barrel.

Officer Kenneth Leary testified as an expert in firearms examinations.  He examined fourteen 7.62 millimeter shell casings recovered from the August 23, 1998, shooting and was able to determine that they were all fired from the same weapon.  Another shell casing recovered from the scene exhibited insufficient stria to make a determination.  Leary also examined a bullet and copper jacket fragment recovered from the August 23, 1998 shooting and found that they were fired from the same weapon.  Finally, Leary also compared shell casings from the two earlier homicides with shell casings recovered at the August 23, 1998 shooting, and was able to match two cartridge cases recovered at the homicide scene to the fourteen cartridge cases recovered at the August 23, 1998 shooting.

State v. Bradford, 846 So.2d 880, 883-85 (La. App. 4th Cir. 2003); State Record Volume 1 of 9, Louisiana Fourth Circuit Court of Appeal Opinion, 2002-KA-1452, pp. 2-6, April 23, 2003.

Bradford was tried before a jury on March 20 and 21, 2001, and he was found guilty as charged of all four counts.[4]  The state trial court sentenced him to serve concurrent life sentences on each of the three second degree murder counts and a

---

[4]St. Rec. Vol. 1 of 9, Trial Minutes (3 pages), 3/20/01; Trial Minutes, 3/21/01; St. Rec. Vol. 3 of 9, Trial Transcript, 3/20/02; Trial Transcript , 3/21/02.

consecutive sentence of 50 years in prison for the attempted second degree murder count.[5]   The sentences were to be served without benefit of parole, probation or suspension of sentence.   At the sentencing hearing, the state trial court also denied Bradford's motions for new trial and for judgment notwithstanding the verdict, both of which were based on the assertion that the verdict was contrary to the law and evidence.[6] Counsel also moved for appeal.[7]

On March 21, 2002, Bradford, represented by different counsel, filed another motion seeking a new trial based on Brady v. Maryland, 373 U.S. 83 (1963), and Kyles v. Whitley, 514 U.S. 419 (1995), alleging that newly obtained medical records of Percy Cooper, the State's only eyewitness, proved that Cooper was a narcotics user.   Counsel argued that this was crucial and material impeachment evidence which had not been provided to the defense by the State prior to trial.[8]   The state trial court held a hearing on

---

[5]St. Rec. Vol. 2 of 9, Sentencing Minutes, 5/4/01; St. Rec. Vol. 3 of 9, Sentencing Transcript, 5/4/01.

[6]St. Rec. Vol. 1 of 9, Trial Court Order, 5/4/01; Motion for New Trial, 5/4/01; Motion for Judgment of Acquittal Notwithstanding the Verdict, 5/4/01.

[7] St. Rec. Vol. 3 of 9, Sentencing Transcript, pp. 4, 6, 5/4/01.

[8]St. Rec. Vol. 1 of 9, Motion for New Trial, 3/21/02; see also Supplemental Motion for New Trial (undated).   The hearing transcript indicates that the supplemental motion was filed on the day of the hearing, June 14, 2002.   St. Rec. Vol. 4 of 9, Hearing Transcript, 6/14/02.

the motion on June 14, 2002.[9]  At the hearing, Bradford's counsel withdrew the Brady claim, which had argued that the medical records had been intentionally withheld by the State.[10]  Instead, counsel pursued relief based on the argument that medical records were newly obtained and warranted a new trial and that, under Kyles, the State should have sought out the medical records and provided them to the defense.

The State argued that the fact that Percy Cooper was in the hospital was a known fact prior to trial and the defense could have subpoenaed those records prior to trial.  The State also argued that the records were not in the possession of an enforcement agency, so that no burden was on the State under Kyles.

The court also heard the testimony of Bradford's trial counsel, who indicated that he knew that Cooper had been in the hospital and relied on the presumption that the State would use his records at trial and provide them to the defense through regular discovery. He also recalled that, at some point, trial continuances were granted to enable him to attempt to obtain copies of the medical records.  The records were not received prior to trial and counsel's request for a continuance on the morning of trial was denied.

On August 20, 2002, the court denied the motion for new trial in open court, finding that the medical records were not newly discovered evidence and could have

---

[9]St. Rec. Vol. 2 of 9, Hearing Minutes, 6/14/02; St. Rec. Vol. 4 of 9, Hearing Transcript, 6/14/02.

[10]St. Rec. Vol. 2 of 9, Hearing Minutes, 6/14/02; St. Rec. Vol. 4 of 9, Hearing Transcript, p. 2, 6/14/02.

been obtained or sought prior to trial by the defense.[11]  The court also denied the motion

to the extent it was raised under <u>Kyles</u> for the same reasons, after the State argued that

it was not in possession of the medical records prior to trial and had no knowledge of any

contradictory evidence.[12]  At the close of the hearing, Bradford's counsel also orally

objected to the sentence as excessive and asked for reconsideration.[13]  The state trial

court denied the request.[14]

On direct appeal, Bradford was represented by different counsel, who raised four

grounds for relief:[15]  (1) The trial court erred in denying the second motion for new trial

based on the newly discovered evidence. (2) Bradford was indicted based on an

improperly constituted grand jury. (3) The trial court erred in allowing reference to

Bradford's post-arrest silence to be presented to the jury. (4) Bradford was denied

effective assistance of counsel who had failed to (a) obtain Cooper's medical records and

the prior criminal history of Officer George Lee during discovery, (b) move for a mistrial

when other crimes evidence and reference to Bradford's post-arrest silence were

---

[11]St. Rec. Vol. 2 of 9, Minute Entry, 8/20/02; St. Rec. Vol. 4 of 9, Transcript of Ruling on Motion for New Trial, p. 4, 8/20/02.

[12]St. Rec. Vol. 4 of 9, Transcript of Ruling on Motion for New Trial, p. 6, 8/20/02.

[13]<u>Id</u>., p. 7.

[14]<u>Id</u>.

[15]St. Rec. Vol. 1 of 9, Appeal Brief, 2002-KA-1452, 12/16/02; <u>State v. Bradford</u>, 846 So.2d at 880; St. Rec. Vol. 1 of 9, 4th Cir. Opinion, 2002-KA-1452, 4/23/03.

introduced at trial, (c) move for mistrial when jury disruption and intimidation became

a factor, (d) develop and present a defense strategy, and (e) move to quash the grand jury

indictment.

On April 23, 2003, the Louisiana Fourth Circuit Court of Appeal affirmed the

conviction and sentence.[16]  The court affirmed the denial of the motion for new trial

based on the trial court's finding that the records could have been obtained prior to trial.

The court also rejected Bradford's Kyles argument when it refused to find that Kyles

extended the prosecution's duty to evidence in the possession of a state-funded hospital.

The court further determined that Bradford's challenge to the grand jury selection

process was procedurally barred and that counsel was not ineffective for failure to file

a motion to quash.  The court resolved that the decision not to seek to quash the

indictment was sound trial strategy, when the State would only re-indict Bradford and

a new indictment may have been for first degree murder.

The appellate court held that Bradford's third claim had not been preserved for

appeal under La. Code Cr. P. art. 841 because counsel did not object to the reference to

his post-arrest silence.  The court also commented that the reference was not intended as

an exploitation of Bradford's silence and that the statement by Officer Hamilton was

---

[16] State v. Bradford, 846 So.2d at 880; St. Rec. Vol. 1 of 9, 4th Cir. Opinion, 2002-KA-1452,
4/23/03.

merely a description of the reading of the <u>Miranda</u> warnings.  With regard to Bradford's ineffective assistance of counsel claims, the court also resolved that each of the claims was without merit.

Bradford's counsel filed a writ application with the Louisiana Supreme Court on May 20, 2003, raising the same four claims.[17]  The court denied the application without reasons on November 26, 2003.[18]

Bradford's conviction became final 90 days later, February 24, 2004, when he did not file a writ application with the United States Supreme Court.  <u>Ott v. Johnson</u>, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), <u>cert. denied</u>, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

On September 28, 2004, Bradford filed a pro se application for post-conviction relief in the state trial court raising the following six grounds for relief:[19] (1) He was entitled to a new trial because of newly discovered impeachment evidence. (2) He received ineffective assistance of counsel because counsel failed to gather impeachment evidence through lack of due diligence.  (3) The State offered unlawfully seized evidence

---

[17]St. Rec. Vol. 8 of 9, La. S. Ct. Writ Application, 03-K-1410, 5/20/03.

[18]<u>State v. Bradford</u>, 860 So.2d 1133 (La. 2003); St. Rec. Vol. 8 of 9, La. S. Ct. Order, 2003-K-1410, 11/26/03.

[19]St. Rec. Vol. 2 of 9, Application for Post-Conviction Relief, 9/28/04.

into the record.  (4) He received ineffective assistance of counsel when counsel failed to file a motion to suppress the illegally seized evidence. (5) He was denied the right to present an alibi defense because his counsel failed to investigate and subpoena alibi witnesses. (6) He received ineffective assistance of counsel because counsel failed to call alibi witnesses.

Bradford's counsel enrolled and filed a supplemental application for post-conviction relief raising only the following three claims: (1) Bradford was denied effective assistance of counsel in that counsel failed to (a) obtain Cooper's medical records and the prior criminal history of Officer George Lee during discovery, (b) move for a mistrial when other crimes evidence and reference to Bradford's post-arrest silence were introduced at trial, (c) move for mistrial when jury disruption and intimidation became a factor, (d) develop and present a defense strategy, (e) move to quash the grand jury indictment, and (f) make an adequate effort to obtain Cooper's medical records prior to trial. (2) The State failed to produce Cooper's medical records, which were in the constructive possession of the State, in violation of Kyles v. Whitley.  (3) Bradford was indicted by an improperly constituted grand jury.

The State responded, arguing that each of the claims had been raised and addressed on direct appeal.[20]  The State trial court, nevertheless, held another evidentiary hearing on August 26, 2005, at which Bradford's trial counsel testified.[21]

On August 31, 2006, the state trial court denied the application in open court.[22] The court thereafter issued a written judgment on September 12, 2006, and did not provide reasons for its decision.[23]   The record does not indicate whether the court considered Bradford's pro se claims.

Bradford's counsel filed a writ application with the Louisiana Fourth Circuit, alleging that the trial court erred in denying the application for post-conviction relief based on the newly discovered evidence and that trial counsel gave ineffective assistance in the ways previously enumerated.[24]   On November 3, 2006, the Louisiana Fourth

---

[20]St. Rec. Vol. 2 of 9, State's Response to Petitioner's Post-Conviction Relief Application, 3/16/05.

[21]St. Rec. Vol. 2 of 9, Hearing Minutes, 8/26/05; Motion Hearing Transcript, 8/26/05.

[22]St. Rec. Vol. 2 of 9, Minute Entry, 8/31/06.  The petitioner's pleadings indicate that this ruling was delayed because of Hurricane Katrina.  St. Rec. Vol. 6 of 9, 4th Cir. Writ Application, 2006-K-1320, p. 3, 9/29/06.

[23]St. Rec. Vol. 2 of 9, Judgment, 9/12/06.

[24]St. Rec. Vol. 6 of 9, 4th Cir. Writ Application, 2006-K-1320, 9/29/06.

Circuit denied the application, finding that the new evidence issue was repetitious and that there was no error in the trial court's finding counsel's actions were trial strategy.[25]

Counsel thereafter filed a writ application with the Louisiana Supreme Court alleging that the trial court erred in denying the motion for new trial and that counsel was ineffective for untimely discovery of the medical records, failure to move for mistrial in light of the statements by Officers Dotson and Hamilton, jury disruption and failure to present a defense strategy.[26]  The court denied the application without reasons on June 1, 2007.[27]

## II.   FEDERAL HABEAS PETITION

On July 12, 2007, Bradford filed a pro se petition for federal habeas corpus relief in this court raising three grounds for relief:[28]  (1)  The state court erred in denying the motion for new trial in violation of the Fifth and Fourteenth Amendments of the United States Constitution. (2) Petitioner was denied effective assistance of counsel because counsel did not make an adequate effort to obtain Cooper's medical records prior to trial.

---

[25]St. Rec. Vol. 6 of 9, 4th Cir. Order, 2006-K-1320, 11/3/06.

[26]St. Rec. Vol. 9 of 9, La. S. Ct. Writ Application, 2006-KP-2786, 11/28/06; St. Rec. Vol. 2 of 9, La. S. Ct. Letter, 2006-KP-2786, 11/28/06.

[27]State v. Bradford, 957 So.2d 174 (La. 2007); St. Rec. Vol. 9 of 9, La. S. Ct. Order, 2006-KP-2786, 6/1/07.

[28]Rec. Doc. No. 1.

(3) Petitioner was denied effective assistance of counsel in that counsel failed to investigate, interview and call alibi witnesses.

The State filed an opposition in response to Bradford's petition, arguing that Cooper's medical records were not <u>Kyle</u> material and were otherwise known and available to the defense prior to trial.[29]  The State also contends that Bradford failed to establish that his counsel was ineffective in failing to retrieve Cooper's medical records. The State did not address the third issue.

In his reply to the State's opposition memorandum, Bradford concedes that "the Supreme Court of Louisiana has correctly adjudicated the claim on the merits."[30]  He nevertheless requests that this court review the claim.  Bradford further argues that his trial counsel's failure to obtain Cooper's records for trial prejudiced his defense.

III.   <u>GENERAL STANDARDS OF REVIEW</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[31] and

---

[29]Rec. Doc. No. 7.

[30]Rec. Doc. No. 13, p.1-2.

[31]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  <u>United States v. Sherrod</u>, 964 F.2d 1501, 1505 (5th Cir. 1992).

applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198

(5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore

applies to Bradford's petition, which, for reasons discussed below, is deemed filed in this

federal court on July 6, 2007.[32]

The threshold questions in habeas review under the amended statute are whether

the petition is timely and whether the claims raised by the petitioner were adjudicated on

the merits in state court; i.e., the petitioner must have exhausted state court remedies and

must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20

(5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes that Bradford's petition is timely, the claims are exhausted,

and none appear to be in procedural default.  The State argues, however, that Bradford's

claims are without merit.

---

[32]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas
corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners
acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for
delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184
F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378
(5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995).  Bradford's petition was filed
by the clerk of court on July 12, 2007, when the filing fee was paid.  Bradford dated his signature on the
petition's affidavit of mailing on July 6, 2007.  Rec. Doc. No. 1, Memorandum, p. 31.  This is the earliest
date on which he could have delivered the pleadings to prison officials for mailing.  The fact that he paid
the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se
petition.  See Cousin v. Lensing, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has
not paid the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

IV.   STANDARDS OF REVIEW

Amended 28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"  Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ
> if the state court arrives at a conclusion opposite to that reached by this
> Court on a question of law or if the state court decides a case differently
> than this Court has on a set of materially indistinguishable facts.  Under the
> "unreasonable application" clause, a federal habeas court may grant the
> writ if the state court identifies the correct governing legal principle from
> this Court's decisions but unreasonably applies that principle to the facts
> of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000);  Penry, 532 U.S. at 792-93;

Hill, 210 F.3d at 485.  "'A federal habeas court may not issue the writ simply because

that court concludes in its independent judgment that the state court decision applied [a

Supreme Court case] incorrectly.'"  Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting

Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone,

535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the

only question for a federal habeas court is whether the state court's determination is

objectively unreasonable."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert.

denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to

show that the state court applied the precedent to the facts of his case in an objectively

unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25);

Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

V.      DENIAL OF THE MOTION FOR NEW TRIAL (CLAIM NO. ONE)

Bradford alleges that the state trial court should have granted him a new trial based on Percy Cooper's medical records, which were not provided to the defense by the State before trial and which contained crucial impeachment evidence about Cooper's drug use. Bradford's counsel first raised this claim in the second motion for new trial before the state trial court.

After conducting an evidentiary hearing at which trial counsel testified, the state trial court held that the medical records were not newly discovered evidence and could have been obtained by the defense prior to trial.[33] The court also denied Bradford's claim under Kyles for the same reasons. The State argued at the hearing that it was not in possession of the medical records before trial and had no knowledge of any contradictory evidence contained therein.[34]

Bradford's counsel raised the claim again on direct appeal. The Louisiana Fourth Circuit affirmed the denial of the motion for new trial based on the trial court's finding that the records could have been obtained prior to trial by the defense. The court also rejected Bradford's Kyles argument after refusing to find that Kyles extended the prosecution's duty to evidence in the possession of a state-funded hospital. The

_____

[33]St. Rec. Vol. 2 of 9, Minute Entry, 8/20/02; St. Rec. Vol. 4 of 9, Transcript of Ruling on Motion for New Trial, p. 4, 8/20/02.

[34]St. Rec. Vol. 4 of 9, Transcript of Ruling on Motion for New Trial, p. 6, 8/20/02.

Louisiana Supreme Court denied Bradford's subsequent writ application without reasons and is presumed to have followed those of the appellate court.  Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991).

Bradford and his counsel both raised the claim again on post-conviction review in the state trial court.  The state trial court again held an evidentiary hearing at which Bradford's trial counsel again was called to testify.  The court denied relief but the reasons for the denial are not in the record.

Nevertheless, on review of that ruling, the Louisiana Fourth Circuit denied Bradford's writ application finding that this issue was repetitious.  The Louisiana Supreme Court denied Bradford's subsequent writ application without reasons.

Federal courts have held that a state court's denial of a motion for new trial does not necessarily constitute a violation of a federal constitutional right.  Haygood v. Quarterman, 239 Fed. Appx. 39, 42 (5th Cir. Jun. 14, 2007) (citing Dickerson v. Guste, 932 F.2d 1142, 1145 (5th Cir.1991)).  A petitioner's contention that a state trial court abused its discretion by denying his motion for a new trial based on newly discovered evidence is not alone a ground for relief on federal habeas corpus.  See, Jacobs v. Scott, 31 F.3d 1319, 1324 (5th Cir.1994), cert. denied, 513 U.S. 1067 (1995).

Furthermore, the United States Supreme Court held in Herrera v. Collins, 506 U.S. 390, 400 (1993), that "[c]laims of actual innocence based on newly discovered evidence

have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."  The Court went on to declare that any such showing would "for such an assumed right would necessarily be extraordinarily high."  Id. at 417.  Consequently, ". . . it is the law of this circuit that 'the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus.'"  Jacobs, 31 F.3d at 1324 (quoting Boyd v. Puckett, 905 F.2d 895, 896-97 (5th Cir. 1990)).

Thus, for Bradford's claim to proceed, he must establish that the denial of the motion for new trial violated some specific constitutional right.  In this case, he argues that Cooper's medical records constituted Kyles material which the State was required to produce to the defense prior to trial.  I note that, on the state trial court level, Bradford's counsel withdrew any suggestion that the State knowingly and willfully withheld the evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963), and no such claim has been exhausted through the state system.  Therefore, Bradford's claim is addressed here only under Kyles v. Whitley, 514 U.S. 419 (1995).

In Kyles, the United States Supreme Court held that "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police.  But whether the prosecutor succeeds or fails in meeting this obligation (whether, that is, a failure to disclose is in good faith or bad faith,

see Brady, 373 U.S., at 87, 83 S.Ct., at 1196-1197), the prosecution's responsibility for failing to disclose known, favorable evidence rising to a material level of importance is inescapable." Kyles, 514 U.S. at 438.

Evidence favorable to the defendant but not disclosed to him is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different" and "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Kyles, 514 U.S. at 433, 435.  In determining whether the undiscovered evidence rendered a defendant's trial unconstitutional, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Kyles, 514 U.S. at 433-44.

However, even with this burden placed on the State, federal courts have held that the prosecution is not obligated to provide materials to a defendant's trial counsel where defense counsel could have obtained the records by exercising reasonable diligence. Rector v. Johnson, 120 F.3d 551, 558-59 (5th Cir. 1997) (holding that the State has no duty to lead the defense toward potentially exculpatory evidence if the defendant possesses the evidence or can discover it through due diligence); Bigby v. Cockrell, 340 F.3d 259, 279 (5th Cir. 2003) (concluding that Brady did not obligate prosecutors to

provide defendant's trial counsel with copies of his client's jail medical records, which showed the number of psychotropic medications that defendant was taking while incarcerated and awaiting trial, because defense counsel could have obtained the records by exercising reasonable diligence); Kutzner v. Cockrell, 303 F.3d 333, 336 (5th Cir. 2002) (holding that Brady does not require prosecutors to furnish a defendant with exculpatory evidence if that evidence is fully available to the defendant through an exercise of reasonable diligence).

In Bradford's case, the medical records at issue were not in the possession of the prosecution, the police or an investigator.  The testimony at the various state court hearings clearly reflects that the prosecution was not in possession of the medical records and neither the prosecution nor defense counsel was aware that the records contained reference to Cooper's narcotics use.

It is also uncontradicted that the medical records were in the possession of the hospital where Cooper was treated after he was shot by Bradford.  Kyles would only compel the prosecutor to look for favorable evidence if that evidence is within the possession of the prosecutorial team.

This court must first examine whether Cooper's medical records fall within the ambit of Kyles; that is, whether the records were in the possession of "others acting on the government's behalf in the case."  I find guidance in Shakir v. U.S., 32 F. Supp.2d

651 (S.D.N.Y. 1999), in which the court attempted to define the boundaries of a

"prosecution team" under <u>Kyles</u>.

> Evidence favorable to the defendant must have been known to the
> government to implicate Brady, since "[t]he Brady obligation extends only
> to material evidence that is known to the prosecutor." <u>United States v.</u>
> <u>Avellino</u>, 136 F.3d 249, 255 (2d Cir. 1998) (citation omitted). <u>See also</u>
> [<u>U.S. v. ]Payne</u>, 63 F.3d [1200,] 1208 [(2d Cir. 1995) (the government has
> "an affirmative duty to disclose favorable evidence <u>known to it</u>")
> (emphasis added). Absent prosecutorial knowledge, by definition there can
> have been no governmental suppression of evidence. But the boundaries
> of the government's knowledge-actual or constructive, real or presumed,
> direct or imputed-are not drawn with precision. It is well settled that those
> boundaries extend beyond the individual prosecutor or prosecutors who
> obtain the indictment and conduct the trial. "[T]he individual prosecutor
> has a duty to learn of any favorable evidence known to others acting on the
> government's behalf in the case, including the police." <u>Kyles v. Whitley</u>,
> 514 U.S. 419, 437, 115 S. Ct. 1555, 131 L. Ed.2d 490 (1995). "The
> individual prosecutor is presumed to have knowledge of all information
> gathered in connection with the government's investigation." <u>Payne</u>, 63
> F.3d at 1208 (citing <u>Kyles v. Whitley</u>). But the court of appeals cautioned
> in <u>Avellino</u>, 136 F.3d at 255:
>
> > Nonetheless, knowledge on the part of persons employed by
> > a different office of the government does not in all instances
> > warrant the imputation of knowledge to the prosecutor, for
> > the imposition of an unlimited duty on a prosecutor to inquire
> > of other offices not working with the prosecutor's office on
> > the case in question would inappropriately require us to adopt
> > a monolithic view of government that would condemn the
> > prosecution of criminal cases to a state of paralysis.

<u>Shakir v. U.S.</u>, 32 F. Supp.2d at 658 (internal quotation marks and citations omitted).

Considering the foregoing, there has been no showing in the state courts or to this

court that the hospital was in any way connected to the prosecutor's office or the

investigation of the case.  My research has located no reported decision defining a hospital where a shooting victim was treated as part of a prosecution team merely because it is a state-funded hospital.[35]  I do not find that Kyles would have compelled the prosecutor to seek out medical records in the custody of a hospital and scour them for potential impeachment material to provide to the defense.

In my view, the fact that Bradford's trial counsel recognized the potential import of those records to an attempted second degree murder charge is even more compelling. Counsel testified that he assumed that the medical records were relevant to prove the extent of Cooper's injuries, a point apparently missed by the prosecution.  The fact that the records contained toxicology reports was apparently not discovered until post-trial, after counsel actually received those records.

Bradford's counsel also attempted both before and during trial, though unsuccessfully, to obtain those records.  There is no doubt from the record and testimony before the state courts that Cooper's medical records were available and potentially attainable by the defense.  In such a case, neither Brady nor Kyles would have placed a burden on the prosecution to obtain records available to the defense through due

---

[35]There are cases which have addressed material in the hands of a physician testifying for the prosecution under Brady and Kyles.  See, e.g., McBride v. Johnson, 122 F.3d 1067 (5th Cir. 1997). One such decision compelling disclosure under Brady reflects that medical records of the witness were subpoenaed by the prosecutor prior to trial and never turned over to the defense. See, e.g., Cheung v. Maddock, 32 F. Supp.2d 1150 (N.D. Cal. 1998).  Both scenarios are distinguishable from the instant case, which presents no such circumstances.

diligence.  Rector, 120 F.3d at 558-59.  The fact that counsel was not successful in obtaining them was not the fault of the prosecution.

For these reasons, the state courts' denial of relief on this claim, and of the motion for new trial, was neither contrary to, nor an unreasonable application of, Supreme Court precedent.  Bradford is not entitled to relief on this claim.

VI.    INEFFECTIVE ASSISTANCE OF COUNSEL (CLAIM NO. TWO)

Bradford alleges that he received ineffective assistance from his trial counsel, who failed successfully to obtain Cooper's medical records prior to trial and failed to secure alibi witnesses for trial.  The first of these allegations was raised on direct appeal and dismissed by the Louisiana Fourth Circuit.

In doing so, the state appellate court referenced the testimony of Bradford's counsel that he had assumed that the State would procure Cooper's medical records to establish the extent of his injuries.  The toxicology information was not known until after the records were received by subsequent counsel.  The court also cautioned that, pursuant to Strickland v. Washington, 466 U.S. 668 (1984), hindsight was not the standard for judging the adequacy of counsel's performance.  The Louisiana Supreme Court denied Bradford's subsequent writ application without further comment.

Bradford raised this claim in his pro se application for post-conviction relief.  He also raised for the first time the second of his federal grounds for relief regarding

presentation of alibi witnesses. Bradford's post-conviction counsel also filed a supplemental application in which he raised, among other things, counsel's alleged ineffective assistance based on failure timely to obtain the medical records. The state trial court denied the application, but the reasons for the denial are not in the record. The record also is not clear as to whether the trial court considered or ruled on the pro se claims at all.

Furthermore, a thorough reading of the record reflects that, when counsel filed for review in the Louisiana Fourth Circuit, he raised the issue related to the medical records but did <u>not</u> raise the issue related to the alibi witnesses. The court denied that application, finding no error in the trial court's ruling and commenting that counsel's actions were trial strategy. The Louisiana Supreme Court denied without reasons the subsequent writ application filed by counsel, which had not addressed alibi witnesses.[36]

I find that petitioner has failed to raise the issue of ineffective assistance of counsel for failure to call alibi witnesses at each level of the state courts. He therefore has failed to exhaust his state court remedies. <u>See</u> <u>Rose v. Lundy</u>, 455 U.S. 509 (1982). Nevertheless, 28 U.S.C. § 2254(b)(2) authorizes denial of habeas corpus relief,

---

[36]Bradford filed a motion to supplement counsel's writ application to raise ineffective assistance of counsel for failure to call the alibi witnesses. St. Rec. Vol. 9 of 9, Motion to Supplement, 06-KP-2786, 2/7/07. The record does not indicate whether that motion was granted or the issue considered.

notwithstanding a petitioner's failure to exhaust his state court remedies, where the court finds that the claim is without merit.

The issue of ineffective assistance of counsel is a mixed question of law and fact. Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994). Thus, the question before this court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, United States Supreme Court precedent.

The standard for judging the performance of counsel was established by the Supreme Court in Strickland, 466 U.S. at 668, which the state trial court cited and applied. In Strickland, the United States Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and resulting prejudice. Strickland, 466 U.S. at 697. The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. Kimler, 167 F.3d

26

at 893.  A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.'  It is not enough, however, under Strickland 'that the errors had some conceivable effect on the outcome of the proceeding.'"  Motley, 18 F.3d at 1226 (quoting Strickland, 466 U.S. at 693).

On federal habeas review, scrutiny of counsel's performance "must be highly deferential," and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance."  Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999) (citing Strickland, 466 U.S. at 689-90).  In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial.  Strickland, 466 U.S. at 689; Neal, 286 F.3d at 236-37; Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001).  "A court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight."  Bell, 535 U.S. at 697 (citing Strickland, 466 U.S. at 689).

This court must apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 690.  Federal courts have consistently recognized that tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance.  Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)). Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise.  Strickland, 466 U.S. at 689; Moore, 194 F.3d at 591.  The burden is on petitioner to demonstrate that counsel's strategy was unreasonable.  Id.

A.    FAILURE TO SECURE MEDICAL RECORDS PRIOR TO TRIAL

At the two evidentiary hearings held in the state trial court, Bradford's counsel testified consistently that he had assumed that the State would procure Cooper's medical records as a necessary part of proving the extent of his injuries from the shooting.  The Louisiana Fourth Circuit found, and it is not refuted, that the toxicology information was not evident until after the records were received.  In other words, neither the prosecution nor the defense knew that the records actually contained anything with the potential to impeach Cooper.

Counsel also testified that he contacted the prosecutor the night before trial because he had not received a copy of the medical records.  Upon learning that the State did not have them, he promptly asked for a continuance of the trial the next morning. Though the trial court denied the request, a subpoena was issued.  The records were not received before the end of trial.

Counsel, nevertheless, had an opportunity to question Cooper thoroughly with respect to his identification of Bradford as the shooter on the night of the triple murder and when he himself was shot.  I note that, contrary to Bradford's representation, Cooper did not actually deny prior drug activity or that he had taken drugs before he witnessed the multiple shooting at the block party on July 5, 1998.  He was never asked that question.  Instead, he was asked by the prosecutor:[37]

> Q.    And prior to going to the block party were you high or drunk or anything like that would affect your ability to perceive someone?
> A.    No, sir.

The prosecutor later asked Cooper again about his condition at the time of the multiple shooting:

> Q.    At any time - well, at the time of this shooting, this incident itself were you high or drunk or was anything affecting your ability to perceive what happened?
> A.    No.

---

[37]St. Rec. Vol. 3 of 9, Trial Transcript, p. 60, 3/21/01.

29

Cooper's testimony was that he was not impaired on the night of the multiple murder.  He was not asked if he was taking drugs on the night he was shot, which was the night of the toxicology report in question, or if he had ever taken drugs.

In addition, Bradford's counsel thoroughly questioned Cooper about what he did and what he claimed to have seen on the night of the shooting.  Bradford has presented nothing post-conviction which would reflect that Cooper made any misstatements at trial.

A federal habeas court evaluates counsel's performance "from the perspective of counsel, taking into account all of the circumstances of the case, but only as those circumstances were known to him at the time in question." Washington v. Watkins, 655 F.2d 1346, 1356 (5th Cir. 1981).  Bradford has not established that his counsel's performance, in light of facts known at the time, was in any way deficient.  To suggest now that counsel should have done something different with a report unknown to both the prosecution and the defense is purely speculative.  As the state courts aptly pointed out, "we do not judge counsel's performance with the benefit of 20/20 hindsight, secure in the possession of new evidence which, had it been known to counsel, would have caused him to act differently."  Vela v. Estelle, 708 F.2d 954, 965 (5th Cir. 1983); Strickland, 466 U.S. at 689.

For the foregoing reasons, the state court's denial of relief on this claim was not contrary to, or an unreasonable application of, Strickland. Bradford is not entitled to relief on this claim.

B.    FAILURE TO CALL ALIBI WITNESSES

Bradford alleges that he had ineffective assistance because his trial counsel failed to investigate and call two alibi witnesses. As a general rule, "'[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'" Graves v. Cockrell, 351 F.3d 143, 156 (5th Cir. 2003) (quoting Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978)). Thus, where the only evidence of an uncalled witness's testimony comes from the defendant, federal courts are reluctant to find ineffective assistance on habeas review. Schwander v. Blackburn, 750 F.2d 494, 500 (5th Cir.1985).

In support of this ground for relief, Bradford claims that, on the night of the multiple shooting, he was at the movies with his former girlfriend and another friend. He has presented an unauthenticated written statement signed with the name "Michelle Piearson." The statement is not under oath. The statement indicates that the writer was at the movies with Bradford on July 5, 1998. The statement is dated August 22, 2005, almost four and one-half years after the trial.

There is no evidence, other than Bradford's self-serving statement, that trial counsel knew or should have known of any such alibi.  The statement signed in 2005 is itself akin to new evidence, which in hindsight may have been beneficial to trial counsel's trial strategy decisions.  However, as noted above, hindsight is not the standard by which counsel's actions are judged, Strickland, 466 U.S. at 689, nor is new evidence sufficient alone to warrant habeas relief. See Herrera, 506 U.S. at 417, 419 (claims of actual innocence based on newly discovered evidence do not state a ground for federal habeas relief absent an independent constitutional violation).  Counsel cannot be expected to present that which was not available to him.  Bradford has failed to make a factual showing that counsel was aware of a potential alibi defense or knew of the alibi witnesses.  The unauthenticated statement signed years after trial is an insufficient basis on which to question counsel's performance or his chosen defense strategy in light of the overwhelming evidence of guilt presented at trial.

Bradford has failed to establish that he is entitled to relief on this claim under Strickland or that any denial of relief on this claim by the state courts was contrary to, or an unreasonable application of, Supreme Court law.

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that the petition of Delmar Bradford for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this ___2nd___ day of January, 2008.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE